UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,
Plaintiff,

vs.

RESEARCH, DEVELOPMENT AND TECHNICAL EMPLOYEES UNION,
Defendant.

Civil Action No. 1:12-cv-11315

**PLAINTIFF'S STATUS REPORT**

Plaintiff Massachusetts Institute of Technology ("MIT" or the "Institute") hereby apprises the Court of the current status of this matter, which involves a dispute over the arbitrability of the denial of an employee's access to a nuclear reactor on MIT's campus.

1. On November 21, 2012, MIT filed a Motion for Judgment on the Pleadings (the "Motion") seeking a declaratory judgment that MIT is not required to arbitrate that portion of a grievance filed by defendant Research, Development and Technical Employees Union ("Union") which challenges MIT's decision to rescind and not reinstate an employee's authorization for unescorted access to a nuclear reactor on MIT's campus (the "Reactor"). Docket No. 20. In its accompanying memorandum of law (Docket No. 21), MIT argued that it could not be compelled to arbitrate the issue of unescorted access to the Reactor because it never agreed to arbitrate that issue in the collective bargaining agreement between the Institute and the Union (the "Agreement" or "CBA"), and that this Court had the authority to enter a declaratory judgment on that issue. *See Granite Rock Co. v. International Broth. of Teamsters*, 130 S.Ct. 2847, 2858 (2010) ("[E]xcept where the parties clearly and unmistakably provide otherwise, it is the court's



135258.1

duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter").

2. On December 12, 2012, the Union filed its Opposition to the Motion (Docket No. 26), arguing, *inter alia*, that MIT had not presented a "substantial controversy" requiring the Court's intervention and that "[i]t is possible that [MIT] will convince an Arbitrator that he or she has no authority to decide the site access issue…." Opposition, pp. 3, 5.

3. This Court heard argument on the Motion on January 13, 2013. At the hearing, this Court acknowledged its power to enter a judicial declaration, but issued an order stating that the Court would "stay its hand" and remand the matter to the Arbitrator for arbitration, while permitting either side to move to re-open the case upon the completion of the arbitration. Docket No. 28.

4. Thereafter, the parties briefed the issue of the arbitrability of unescorted access to the Reactor for the Arbitrator.

5. On April 4, 2013, the Arbitrator issued his Award, finding that "[t]he grievance regarding the removal of access to the Grievant is substantively arbitrable." A true copy of the Arbitrator's Award is attached as <u>Exhibit 1</u>.

6. In the Award, the Arbitrator agreed with MIT that the arbitration provision of the CBA "clearly and unambiguously" states that it is applicable to a grievance "'concerning the interpretation or application of this Agreement,'" and that that "there is no discussion contained [in the CBA] regarding the denial of authorization for unescorted access." *Id.* Despite this recognition of what the Agreement plainly says and does not say, the Arbitrator went on to state that MIT's "argument" that the CBA "only permits regarding interpretation or application of the Agreement" was just "somewhat meritorious," even though, as the Arbitrator acknowledged, this

is what the Agreement "clearly and unambiguously" states. Exhibit 1, p. 25. Even more surprisingly, while acknowledging the express limitation in the CBA on the scope of the arbitration clause, the Arbitrator asserted that MIT's "argument" about this limitation "*should not be the controlling one*…" *Id* (emphasis added). Contrary to the Arbitrator's remark, such a limitation *is* controlling. See *Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union*, 595 F.3d 128, 132 (3d Cir. 2010) ("Where an arbitration clause in a collective bargaining agreement limits arbitration to those disputes which require interpretation of the agreement, … a grievance is *excluded* from arbitration *unless it arises from a specific provision* of the agreement")(emphasis added).[1]

7. The Arbitrator then addressed the Union's argument that MIT's decision to deny the Grievant access to the Reactor allegedly "violated" two articles of the Agreement, namely Article XVIII (titled "Promotions, Transfers, Vacancies and Merit Increases") and Article XX (titled "Demotion and Discipline"). Exhibit 1, pp. 23-24, 25-26. With respect to Article XVIII, the Arbitrator concluded – correctly, in MIT's view – that the transfer provision "is not particularly relevant" to the issue of unrestricted access. Exhibit 1, p. 26. With respect to Article XX, the Arbitrator stated – again, correctly, in MIT's view – that "the action of the removal of [the grievant's] unrestricted access in and of itself is not considered to be a disciplinary action…" *Id.* (emphasis added). The Arbitrator then contradicted this remark by stating that the removal of access "must be considered to be disciplinary in nature" in this case. Exhibit 1, pp. 26-27 (emphasis added). The Arbitrator's rationale for this conclusion was that the Grievant's denial of access "occurred following" her receipt of an informal warning regarding certain behavior (e.g., removing mail from another employee's mailbox, refusing and

[1] The Agreement expressly provides that, in the event of an arbitration, "the arbitrator shall have no authority to add to, subtract from, or change or disregard any of the terms or provisions of this Agreement." See Plaintiff's Memorandum of Law in Support of its Motion for Judgment on the Pleadings (Docket 21), p. 13 n. 11.

failing to provide an explanation for her conduct during an investigation). Exhibit 1, p. 26. MIT submits that the mere fact that the Grievant's denial of access came after a disciplinary action (e.g., the informal warning) does not transform the access denial into a form of discipline that is subject to arbitration.[2]

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY**
By its attorney,

/s/ *Scott A. Roberts*
Scott A. Roberts, BBO No. 550732
sroberts@hrwlawyers.com
Hirsch Roberts Weinstein LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02108
Phone: (617) 348-4300
Fax: (617) 348-4343

Dated: May 3, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by U.S. Mail on May 3, 2013.

*/s/ Scott A. Roberts*
Scott A. Roberts

[2] By way of analogy, a decision to revoke a student's scholarship after he has been disciplined for violations of MIT's code of conduct would not transform the scholarship revocation into a form of discipline. MIT has the right to determine whether a student will or will not receive a scholarship. Similarly, MIT has the right to determine who will and will not be permitted access to its Reactor. Exhibit 1, p. 28.